UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD F. KIDNEY,

                              Plaintiff,

        -against-                                    3:16-CV-0831 (LEK/DEP)

JOHN WEBSTER, *et al.*,

                              Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        This case arises from an alleged slip and fall that took place at a Wal-Mart Supercenter in

Vestal, New York, on April 12, 2013. Dkt. No. 2 ("Complaint") ¶¶ 3–10. On July 7, 2016,

Defendants removed this action to the Northern District of New York pursuant to 28 U.S.C.

§ 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332. Dkt. No. 1 ("Notice of

Removal") ¶ 13. Presently before the Court are Defendants' motion to dismiss for lack of

personal jurisdiction, insufficient service of process, and failure to state a claim, and pro se

plaintiff Richard F. Kidney's motion to remand. Dkt. Nos. 5 ("Motion to Dismiss"), 21 ("Motion

to Remand"). Defendants responded to the Motion to Remand, Dkt. No. 22 ("Response"), and

Kidney filed a reply, Dkt. No. 24 ("Reply"). For the following reasons, Defendants' Motion is

granted and Kidney's Motion is denied.

## II.    BACKGROUND[1]

Kidney and his family live in Owego, New York. Compl. ¶ 1. The individual defendants—John Webster, Bill Shiohira, Melissa Fahey, Greg Foran, Doug McMillon, and David Stills—are all residents of Arkansas. Notice of Remand ¶¶ 4–9. Webster, Shiohira, and Fahey work for Claims Management, Inc. ("CMI"), which is an arm of Wal-Mart Stores, Inc. Compl. ¶ 2. Foran is the President and CEO of Wal-Mart U.S., McMillon is the President and CEO of Wal-Mart Stores, Inc., and Stills is Vice President of Risk Management at Wal-Mart Stores, Inc. Id. Kidney also named the Wal-Mart Supercenter in Vestal as a defendant, id. at 1, but that store location is not a legal entity and so cannot be sued. The Supercenter in question is operated by Wal-Mart Stores East, LP, which "is a Delaware Limited Partnership with a principal place of business in the state of Arkansas." Notice of Removal ¶ 10. Kidney appears to have wanted to include Wal-Mart Stores, Inc. and CMI as defendants as well, since one of his causes of action is asserted against "CMI" and "Wal-Mart." Compl. ¶ 17.[2] Yet neither is named in the caption of the Complaint. Id. at 4. Finally, Kidney included "un-named others" in the caption, id., though the remainder of his Complaint fails to refer to any unnamed persons (not counting Wal-Mart Stores, Inc. and CMI) as potential defendants.

---

[1] Because this case is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis for this section. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

[2] Neither party provides the citizenship of Wal-Mart Stores, Inc., or CMI, though Defendants assert that "all the Defendants are citizens of . . . Delaware and/or Arkansas." Resp. at 2.

On April 12, 2013, Kidney took his wife and two children to a Wal-Mart Supercenter in Vestal, New York. Id. ¶ 7. Kidney was wearing "rubber soled sneakers with plenty of tread (traction) on them." Id. ¶ 9. Inside the Wal-Mart there was a tax preparation booth near the men's bathroom. Id. ¶ 7. Kidney decided to have his taxes done while his wife went shopping. Id. When it was Kidney's turn to have his taxes prepared, he sat down in a chair that faced the tax preparer's desk, "giving [him] a clear and open view of the men[']s room." Id. Kidney sat there for somewhere between ninety and 150 minutes, and during that time he did not notice anyone entering the men's bathroom to perform cleaning. Id.

At some point, Kidney and his son entered the men's bathroom. Id. ¶ 8. The sinks were covered with yellow tape, presumably indicating that they were off-limits. Id. "There were no other signs" in the bathroom, and Kidney saw "toilet paper and spills on the floor." Id. Kidney's son used a urinal and Kidney entered a stall. Id. ¶ 9. The floor in the stall "had urine and toilet paper laying along its base," but Kidney asserts that he did not see the urine and toilet paper on the floor while he was sitting on the toilet. Id. He also says he was "not distracted and was using the bathroom for its proposed purpose." Id. When Kidney got up from the toilet, he slipped and fell, "banging [his] face[] and knees, while twisting [his] back." Id. When he tried to get up from the floor, he fell again. Id. His next attempt at standing up was successful, and this time he was assisted by his son, who became upset when he saw that his father's face was bleeding. Id. ¶ 10. Kidney left the bathroom to find the rest of his family, and they went to customer service "to warn [customer service] so no one else could get hurt." Id. The manager sent some employees into the bathroom and "assured [Kidney] that they would take care of the [situation]." Id. The manager then asked Kidney to "fill out an incident report." Id. Kidney's wife had to fill out the

form because he had hurt his hands, but he signed it. Id. Within twenty-four hours of the slip and

fall, Kidney went to the emergency room. Id. ¶ 11.

Soon after the incident, "Walmart through CMI called [Kidney] asking that he not hire an

attorney." Id. ¶ 18. Wal-Mart told him that the case could be settled if he submitted the

appropriate paperwork, and that Webster would be in charge of his case. Id. Kidney claims that

Webster and his coworkers at CMI then "tried to wear [him] down . . . by [engaging in] stalling

tactics." Id. ¶ 19. Webster "fail[ed] to expedite litigation by repeatedly saying required medical

releases were missing." Id. Webster also told lies and engaged in deception, for example by

changing his address from one in Arkansas to one in Kentucky without informing Kidney. Id.

¶ 20. As an another example of the deceit to which he was subjected, Kidney points to Webster

or CMI's failure to respond to his request to see a copy of the incident report his wife had filled

out for him. Id. ¶ 22. Webster eventually made a settlement offer that Kidney considered too

small to "help with much more than a fraction of the debt caused" by the incident. Id. ¶ 21.

Shiohira, another CMI employee, also worked on Kidney's case, and Kidney appears to

allege that Shiohira lied to and deceived him as well. Id. ¶¶ 28–30. Kidney says Shiohira sent him

a letter dated October 6, 2014, which stated that more information was needed before a

settlement offer could be made. Id. ¶ 29. This "contradict[ed the] previous letter from Webster

saying all medicals were received and a settlement offer was made." Id. Fahey, who also worked

for CMI, sent another letter to Kidney on February 10, 2015. Id. ¶ 35. Kidney had never heard of

Fahey before he received this letter. Id. ¶ 37. In the letter, Fahey told Kidney that it appeared

Wal-Mart had exercised reasonable care, and it would typically not make a payment on this kind

of case. Id. But Fahey said the previous settlement offer of $5,000 would stand for twenty days

after the date of the letter. Id.; Reply Ex. B at 3.[3] Kidney felt this offer was inadequate; he describes it in the Complaint as "ridiculously low." Compl. ¶ 37. Kidney does not explicitly say in his Complaint that he rejected the offer, though he implies that he did so when he asserts that "[e]ven though defendants have not paid anything to the plaintiff they reported . . . to Medicare that they did." Id. ¶ 60.[4]

The Complaint contains no indication that Foran, McMillon, or Stills had anything to do with Kidney's case, and Kidney appears to hold them responsible for what CMI and its employees did to him under some kind of respondeat superior theory. Id. ¶¶ 43–44, 49–50, 55–56.

Kidney draws several other legal conclusions from the events just recounted. He says that "Defendants devised and executed a scheme to defraud" him. Id. ¶ 23. He also claims that he was the victim of intentional infliction of emotional distress at the hands of each individual defendant. Id. ¶¶ 27, 33, 41, 47, 53, 59. He accuses Defendants of engaging in "racketeering activity," id. ¶ 36, and he notes that "at a certain time during discovery there should be enough evidence to charge some or all of the defendants with crimes," id. at 20.

On April 20, 2016, Kidney filed his Complaint in the Supreme Court of the State of New York, County of Tioga. Compl. at 4. Beginning June 7, 2016, Defendants started to receive copies of the Complaint that Kidney had sent them. Notice of Removal ¶ 2. Then, on July 7, 2016, Defendants removed this action to the Northern District of New York. Id. ¶ 15. Defendants

---

[3] Presumably, Webster made the first offer for $5,000, though this is not clear from the Complaint.

[4] Kidney appears to allege that Wal-Mart or CMI, rather than any individual defendant, made this false report. Compl. ¶ 60.

moved to dismiss the Complaint on July 14, 2016, arguing that Kidney had failed to properly

serve Defendants, that the Court lacked personal jurisdiction over the individual defendants, that

any claims related to the incident at the Wal-Mart and its aftermath are barred by the applicable

statutes of limitations, and that the remaining allegations in the Complaint fail to state a plausible

claim for relief. Dkt. No. 5-2 ("Memorandum") at 1. In lieu of responding to the Motion to

Dismiss, Kidney moved to remand on the ground that diversity jurisdiction is defeated by the

manager of the Vestal Wal-Mart, an alleged defendant residing in New York whose identity

remains unknown to Kidney because Defendants have withheld it from him. Mot. to Remand

¶¶ 6, 10.

## III.    DISCUSSION

### A.  Motion to Remand

28 U.S.C. § 1441(a) permits a defendant to remove "any civil action brought in a State

court of which the district courts of the United States have original jurisdiction" to a district court

of the United States. The Second Circuit has recognized that, "[i]n light of the congressional

intent to restrict federal court jurisdiction, as well as the importance of preserving the

independence of state governments, federal courts construe the removal statute narrowly,

resolving any doubts against removability." Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043,

1045–46 (2d Cir. 1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)).

But a court "should be cautious about remand, lest it erroneously deprive [a] defendant of the

right to a federal forum." Contitrade Servs. Corp. v. Eddie Bauer Inc., 794 F. Supp. 514, 516

(S.D.N.Y. 1992) (quoting Manas y Pineiro v. Chase Manhattan Bank, N.A., 443 F. Supp. 418,

419 (S.D.N.Y. 1978)).

Moreover, federal courts may not hear a case in the absence of subject matter jurisdiction. A lack of subject matter jurisdiction may not be waived and may be raised by motion or sua sponte at any time. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In the absence of subject matter jurisdiction, federal courts must remand a removed case to state court. 28 U.S.C. § 1447(c).

Defendants argue that remand is inappropriate because the Court has diversity jurisdiction over the case. Resp. at 2. Diversity jurisdiction requires "complete" diversity among the parties—that is, no adverse parties may be citizens of the same state. Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2000) (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373–74 (1978)); accord St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant."). For purposes of diversity jurisdiction, a corporation is a citizen of any state in which it is incorporated, as well as the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1); Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005).

Diversity jurisdiction also requires that there be more than $75,000 in controversy. 28 U.S.C. § 1332(a). A removing defendant need show only "a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." United Food & Commercial Workers Union v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 304–05 (2d Cir. 1994) (quoting Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994)). The burden of

meeting the amount-in-controversy requirement is "hardly onerous . . . for we recognize a rebuttable presumption that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003).

The amount-in-controversy requirement has been met here, because Kidney seeks at least $2,050,000 in damages from Defendants. Compl. ¶ 60. Kidney is a New York citizen, and every named defendant is either an Arkansas or Delaware citizen. Id. ¶¶ 1–2; Resp. at 2. But Kidney argues that complete diversity is lacking because "one defendant," the manager of the Vestal Wal-Mart, is "also a resident from New York." Mot. to Remand at 4. Kidney describes the manager as "a witness and a critical part of the occurrences of the day of my injuries," and he claims that Defendants are preventing him from obtaining the manager's identity. Id.

Section 1441(b)(1) provides that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." In other words, "the citizenship of a fictitious defendant . . . may be ignored in determining whether the requisite diversity exists. So as long as there is complete diversity between each plaintiff and each of the known and named defendants, the case may be removed." Bowen v. Home Depot, No. 01-CV-2411, 2001 WL 920263, at *1 (E.D.N.Y. Aug. 1, 2001); see also Lederman v. Marriott Corp., 834 F. Supp 112, 113 (S.D.N.Y. 1993) ("So-called 'Doe' defendants are disregarded for purposes of determining diversity of citizenship jurisdiction under 28 U.S.C. § 1332 in cases removed to United States district courts pursuant to 28 U.S.C. § 1441.").

Kidney included "un-named others" in the caption of his Complaint, Compl. at 4, and he appears to argue that one of the unnamed defendants is the manager of the Vestal Wal-Mart. One

problem with this argument is that the Complaint does not contain any indication that Kidney regards the manager as a defendant. The manager makes only a brief appearance, sending a team of employees into the men's bathroom and asking Kidney to fill out an incident report. Id. ¶ 10. Further, none of the causes of action in the Complaint is directed at the manager. Id. ¶¶ 19–60. So while the caption includes a reference to "un-named others," there is really nothing in the Complaint to give Defendants notice that Kidney views the manager as a defendant. And Kidney's Motion to Remand refers to the manager as a "vital witness," Mot. to Remand at 4, lending further support to the idea that Kidney does not intend the manager to be a defendant in this case. In any event, since § 1441(b)(1) forbids consideration of fictitious defendants in determining whether removal was proper, and since all the named defendants are diverse from Kidney, removal to this Court was indeed proper, and Kidney's Motion must be denied.

Kidney suggests that Defendants are improperly maintaining diversity jurisdiction by withholding the identity of the manager from him. Mot. to Remand at 4. But again, the most plausible reading of Kidney's filings is that he considers the manager a witness with important information rather than a defendant. And the Court is aware of no authority requiring Defendants to disclose the identity of someone such as the manager before discovery begins. See Newcombe v. Adolf Coors Co., 157 F.3d 686, 690 (9th Cir. 1998) (finding, in the removal context, that "the defendants were under no legal obligation to disclose the [potential defendant's] identity prior to discovery," and that "[t]herefore, [the court] cannot agree with [the plaintiff] that the defendants improperly concealed [the potential defendant's] identity").

Some courts have imposed heightened obligations on defendants opposing remand on the ground that fictitious defendants cannot defeat diversity. These courts have held that the

prohibition on considering the citizenship of fictitious defendants does "not apply when the complaint provide[s] a description of a fictitious defendant in such a way that his identity could not reasonably be questioned." Musical v. PTC All. Corp., No. 08-CV-45, 2008 WL 2559300, at *3 (W.D. Ky. June 25, 2008) (collecting cases). This approach is particularly appropriate where the named defendant is a corporation and the fictitious defendant is an employee of the corporation, because the corporation is probably "in a better position than the plaintiff to ascertain the citizenship of the [fictitious,] non-diverse defendant at the commencement of the action in state court." Marshall v. CSX Transp. Co., 916 F. Supp. 1150, 1152 (M.D. Ala. 1995). But for the reasons discussed above, when Kidney commenced this action in New York state court, it was far from clear that the manager was a defendant—indeed, it was not even clear that Kidney considered him an important witness. The manager was simply a bit player in a drama whose focus was elsewhere. Thus, this line of cases does not help Kidney, and removal was proper.

**B. Motion to Dismiss for Lack of Personal Jurisdiction**

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Where a court relies only upon the pleadings and supporting affidavits, a plaintiff need make only a prima facie showing of personal jurisdiction over a defendant. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005); Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986).

"A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quoting Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F.Supp. 562, 564–65 (S.D.N.Y. 1997)). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998). While a court should assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), it should "not draw 'argumentative inferences' in the plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

In determining whether it may exercise personal jurisdiction, the Court must engage in a two-part inquiry. "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life, 84 F.3d at 567. New York law provides two bases for personal jurisdiction: New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") 301, which authorizes general jurisdiction, and N.Y. C.P.L.R. 302(a), which authorizes long-arm jurisdiction.

Defendants argue that this Court lacks personal jurisdiction over the individual defendants, namely, Webster, Shiohira, Fahey, Foran, McMillon, and Stills. Mem. at 5. Nothing in the Complaint remotely suggests that any of these persons "engages in a continuous and

systematic course of doing business in New York," <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 58 (2d Cir. 1985), the standard for establishing general jurisdiction over a defendant under N.Y. C.P.L.R. 301. "[I]t is unclear whether existing New York general jurisdiction jurisprudence remains viable" in light of the Supreme Court's decision in <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746 (2014). <u>Reich v. Lopez</u>, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014). But the Court need not reach this issue, because "[f]or general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction." <u>Id.</u>; <u>accord</u> <u>Minnie Rose LLC v. Yu</u>, 169 F. Supp. 3d 504, 512 (S.D.N.Y. 2016) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 924 (2011))). None of the individual defendants here is domiciled in New York, so the Court could not exercise general jurisdiction over them without violating due process.

Now the Court must consider whether it may exercise long-arm jurisdiction over the individual defendants. New York's long-arm statute provides for jurisdiction over an out-of-state domiciliary who

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state . . . ; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. 302(a). "Thus, jurisdiction is proper under section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out the subject matter of the transacted business." Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006)

The Court does not have long-arm jurisdiction over Foran, McMillon, or Stills, all of whom are senior executives at Wal-Mart. Compl. ¶ 2. The Complaint fails to allege that these persons have had any contact with Kidney. Moreover, the Complaint does not suggest that they ever set foot in New York, engaged in any conduct directed at New York, or committed any tortious act in connection with the alleged slip and fall and its aftermath. Instead, Kidney alleges that these persons "ratified" the conduct of Webster, Shiohira, and Fahey, all of whom were involved in handling Kidney's claim. Id. ¶¶ 43, 49, 55. But nothing in the Complaint indicates that Foran, McMillon, or Stills had any inkling of what happened to Kidney, and a bare allegation to that effect would be implausible in any event—why would senior executives at Wal-Mart concern themselves with a single alleged slip and fall? Thus, the Court lacks personal jurisdiction over Foran, McMillon, and Stills.

The trickier question is whether the Court has long-arm jurisdiction over Webster, Shiohira, and Fahey. First, have these defendants "transact[ed] any business" in New York? N.Y. C.P.L.R. 302(a)(1). A court must consider four nonexhaustive factors in deciding whether an out-of-state defendant has transacted business in New York:

> 1) whether the defendant has an ongoing contractual relationship with a New York corporation, 2) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, 3) the existence and contents of any choice of law clause in the contract, and 4) whether the contract requires . . . the defendant to send notices or payments into New York or subjects the defendant to supervision by a New York corporation.

Vista Food Exch., Inc. v. Champion Foodservice, LLC, 124 F. Supp. 3d 301, 307 (S.D.N.Y. 2015) (citing Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)).

Kidney's problem is that while "[a] settlement agreement . . . is a contract," Saltzman v. Louisiana Auction Exch., Inc., 997 F. Supp. 537, 540 (S.D.N.Y. 1998), he never accepted the terms of the proposed settlement, and the four factors listed above appear to assume the existence of a contract executed by the parties. For example, there could be no ongoing contractual relationship between the parties in this case because there never was a contract to begin with. The lack of a contract alone therefore makes it impossible for Kidney to satisfy any of the four factors. See Fisher v. Int'l Student Exch., Inc., 38 F. Supp. 3d 276, 283 (E.D.N.Y. 2014) (finding that because "there was never a valid, enforceable contract," the factors outlined in Sunward Electronics were largely inapplicable).

Even if the Court ignored the nonexhaustive four-factor test, case law interpreting the New York long-arm statute would pose serious difficulties for Kidney. One district court in this circuit held that the parties' failure to execute any contract foreclosed long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(1) despite several exploratory meetings in New York between the plaintiffs and the defendants. V Cars, LLC v. Israel Corp., 902 F. Supp. 2d 349, 361–63 (S.D.N.Y. 2012). This result accords with the rule that "exploratory meetings taking place in New York, 'leading

to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York,' are not sufficient contacts to constitute the transaction of business." <u>Aquiline Capital Partners LLC v. FinArch LLC</u>, 861 F. Supp. 2d 378, 388 (S.D.N.Y. 2012) (quoting <u>C–Life Grp. Ltd. v. Generra Co.</u>, 652 N.Y.S.2d 41, 41 (App. Div. 1997)). Another district court held that "meetings in [New York] that are exploratory, *unproductive*, or insubstantial are insufficient to establish requisite contacts with the state." <u>Benson & Assocs., Inc. v. Orthopedic Network of N.J.</u>, No. 98-CV-1020, 1998 WL 388531, at *4 (S.D.N.Y. July 13, 1998) (emphasis added). The court then noted that several New York meetings "were unproductive, in that no contracts were ever formed." <u>Id.</u> The discussions between Kidney and Webster, Shiohira, and Fahey in this case were similarly unproductive, since Kidney refused to accept the settlement offer, which he considered too low. Finally, in <u>Kash 'n Gold, Ltd. v. ATSPI, Inc.</u>, 690 F. Supp 1160, 1163 (E.D.N.Y. 1988), the court made explicit what is implicit in the cases just canvassed, namely that "where no contract is formed and there is no other activity substantial enough to be deemed the transaction of business, then jurisdiction under C.P.L.R. § 302(a)(1) will not lie."

Suppose the parties' failure to execute a contract were not enough to foreclose long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(1). Kidney would still have to face the fact that neither Webster, Shiohira, nor Fahey ever visited New York. These defendants merely communicated with Kidney via telephone and mail. <u>E.g.</u>, Compl. ¶¶ 20, 29, 35. That makes their contacts with New York even more attenuated than those in (for example) <u>V Cars</u>, in which the defendants actually visited New York. 902 F. Supp. 2d at 361–62. Moreover, "[t]elephone calls and written communications" are typically not enough to "provide a sufficient basis for personal jurisdiction

under the long-arm statute." Liberatore v. Calvino, 742 N.Y.S.2d 291, 293 (App. Div. 2002).

True, "[i]f the purpose of the calls [or other communications] is for the defendant to actively

participate in business in New York, then they alone may support a finding of New York long

arm jurisdiction under C.P.L.R. § 302(a)(1)." Carlson v. Cuevas, 932 F.Supp. 76, 78 (S.D.N.Y.

1996); accord Kulas v. Adachi, No. 96-CV-6674, 1997 WL 256957, at *7 (S.D.N.Y. May 16,

1997) ("Only in cases where the telephone call or communication clearly shows that the

defendant intends to project itself into ongoing New York commerce, such as where a defendant

directly conducts market activity or securities transactions in New York over the telephone, do

New York courts sustain jurisdiction based on telephone calls or facsimile transmissions

alone."). But the Court is bound to apply the nonexhaustive four-factor test devised by the

Second Circuit for determining whether a defendant has transacted business in New York, and

neither that test nor the relevant case law appears to contemplate the possibility that a defendant

can be subject to long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(1) if the parties never entered

a contract and the defendant never set foot in New York. Thus, long-arm jurisdiction over

Webster, Shiohira, and Fahey cannot be premised on N.Y. C.P.L.R. 302(a)(1).

The Court also does not have long-arm jurisdiction over Webster, Shiohira, and Fahey

under N.Y. C.P.L.R. 302(a)(2), which confers personal jurisdiction where the defendant

"commit[ed] a tortious act within the state." Nor does it have jurisdiction via N.Y. C.P.L.R.

302(a)(3), which requires, among other things, an allegation that the defendant committed a tort

outside the state causing injury within the state. Stripped of conclusory assertions, Kidney's

Complaint alleges that Webster, Shiohira, and Fahey failed to expeditiously settle his case

against Wal-Mart, that they offered him a settlement amount that he considered too low, that they

sent him contradictory letters about the need for further medical information, that they refused to provide him with the incident report his wife completed for him at the Vestal Wal-Mart, and that they failed to inform him of CMI's address change. Compl. ¶¶ 19, 21–22, 29, 37. These allegations boil down to the assertion that Wal-Mart, through CMI, was playing hardball during the settlement negotiations.

True enough, courts must "construe a pro se complaint liberally." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). But "a pro se complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard." Davis v. Malloy, No. 16-CV-1614, 2017 WL 20912, at *1 (D. Conn. Jan. 2, 2017) (citing Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015)). Construed liberally, Kidney's allegations about the three defendants employed by CMI fail to state a plausible tort claim. Perhaps the defendants in question were less forthcoming and diligent than Kidney had hoped, but dragging one's feet during a settlement negotiation does not give rise to any tort claim with which this Court is familiar. Since Kidney's allegations about Webster, Shiohira, and Fahey fail to suggest that they committed a tort, the Court cannot exercise long-arm jurisdiction over them under N.Y. C.P.L.R. 302(a)(2) or (3). See World Sports Grp. v. Motion Picture Acad. of Arts & Sci., 709 N.Y.S.2d 56, 57 (App. Div. 2000) (finding that long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(3) was improper because the plaintiffs had "neither alleged nor offered proof of the commission of the jurisdictionally requisite tort"). The Court therefore lacks personal jurisdiction over these three defendants. Indeed, it lacks personal jurisdiction over any of the individual defendants.[5]

---

[5] "Because the motion to dismiss based on lack of personal jurisdiction is granted, [the Court] need not address improper service of process . . . ." In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, No. 01-MDL-1428, 2003 WL 22909153, at *1 n.4 (S.D.N.Y. Dec. 9, 2003).

## C. Statutes of Limitations

Defendants argue that jurisdictional issues aside, any claims stemming from the alleged slip and fall on April 12, 2013, are barred by the relevant statutes of limitations. Mem. at 8–9. Under N.Y. C.P.L.R. 214(5), "an action to recover damages for a personal injury" must be brought within three years. Further, N.Y. C.P.L.R. 215(3) provides that a one-year statute of limitations applies to intentional torts. See Callahan v. Image Bank, 184 F. Supp. 2d 362, 363 (S.D.N.Y. 2002) (finding that N.Y. C.P.L.R. 215(3) "requires that an action for an intentional tort be commenced within one year of the alleged injury"). Kidney filed this suit in New York state court on April 20, 2016. Compl. at 4. Defendants therefore argue that "any claim for damages" arising from the alleged slip and fall, which would presumably be based on a negligence theory, is barred by the three-year statute of limitations. Mem. at 9. They also say that any claims about the aftermath of the incident, which would probably involve intentional torts of one kind or another, are barred by the one-year statute of limitations, since "not one of the events alleged by [Kidney] in his Complaint took place any later than February 10, 2015." Id.

Since the Court lacks personal jurisdiction over the defendants involved in the aftermath of the alleged slip and fall, it need not reach the question whether any claims arising from their conduct are barred by the statute of limitations. But the Court undoubtedly has personal jurisdiction over Wal-Mart Stores East, LP, which operates the Vestal Wal-Mart Supercenter. Notice of Removal ¶ 10.[6] Kidney did not name Wal-Mart Stores East, LP as a defendant, but "in view of [his] pro se status, his failure to list [Wal-Mart Stores East, LP] as [a] defendant[] in the

---

[6] Notably, Defendants argue that the Court lacks personal jurisdiction only over the *individual* defendants. Mem. at 5.

caption of the complaint may be excused as a technical irregularity." <u>Jones v. Armstrong</u>, No. 05-CV-450, 2006 WL 860095, at *2 (D. Conn. Mar. 31, 2006). For purposes of deciding Defendants' Motion to Dismiss, then, the Court will consider whether any claims against Wal-Mart Stores East, LP stemming from the alleged slip and fall are time barred.

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York . . . statutes of limitations." <u>Stuart v. Am. Cyanamid Co.</u>, 158 F.3d 622, 626 (2d Cir. 1998). "Under New York law, the statute of limitations for a personal injury action is three years from the date of injury." <u>Tomabene v. Marcial</u>, No. 89-CV-8277, 1990 WL 165697, at *1 (S.D.N.Y. Oct. 26, 1990) (citing N.Y. C.P.L.R. 214(5)); <u>see also</u> <u>Rothstein v. Tenn. Gas Pipeline Co.</u>, 616 N.Y.S.2d 902, 906 (App. Div. 1994) ("As a general rule, a cause of action does not accrue until an injury is sustained."); <u>Fleishman v. Eli Lilly & Co.</u>, 465 N.Y.S.2d 735, 736 (App. Div. 1983) ("In general . . . a cause of action for personal injuries . . . accrues at the time of injury."). Here, the injury occurred when Kidney slipped and fell at the Vestal Wal-Mart on April 12, 2013. Compl. ¶¶ 8–10. Since he filed this case in New York state court on April 20, 2013, any claims stemming from the injuries he sustained on that day are barred by the three-year statute of limitations.[7]

Kidney finds no relief from the doctrine of equitable estoppel, which prevents "a defendant from using the statute of limitations as a defense 'where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding.'" <u>Putter v. N. Shore Univ. Hosp.</u>, 858 N.E.2d

---

[7] Of course, to the extent that any of these claims involve intentional torts, they are time barred as well under the one-year statute of limitations applicable to intentional torts. N.Y. C.P.L.R. 215(3).

1140, 1142 (N.Y. 2006) (alteration in original) (quoting <u>Zumpano v. Quinn</u>, 849 N.E.2d 926, 929 (N.Y. 2006)). A defendant is equitably estopped from asserting a statute-of-limitations defense when she engages in "fraud, misrepresentations, or deception [that is] affirmative and specifically directed at preventing the plaintiff from bringing suit." <u>Twersky v. Yeshiva Univ.</u>, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014). "Moreover, the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations." <u>Zumpano</u>, 849 N.E.2d at 929. Equitable estoppel is an "extraordinary remedy [that] is only applicable in circumstances where there is evidence that plaintiff was lulled into inaction by defendant in order to allow the statute of limitations to lapse." <u>E. Midtown Plaza Hous. Co., Inc. v. City of New York</u>, 631 N.Y.S.2d 38, 38 (App. Div. 1995). Further, "[t]he courts are not free to extend the [s]tatute of [l]imitations, and certainly may not invent tolling provisions simply because to do so might seem necessary in order to avoid results thought to be unfortunate in particular cases." <u>Roldan v. Allstate Ins. Co.</u>, 544 N.Y.S.2d 359, 367 (App. Div. 1989).

Kidney has not come close to showing that Defendants intentionally "lulled [him] into inaction in order to allow the statute of limitations to expire." <u>Neil v. City of New York</u>, 944 N.Y.S.2d 533, 534 (App. Div. 2012). According to the Complaint, the defendants involved in handling Kidney's claim were a little disorganized and less than forthcoming. But there is no indication that anything they did was designed to prevent him from bringing suit before the expiration of any statute of limitations. And "[i]t is well-settled law in New York that the mere fact that settlement negotiations have been ongoing between parties is insufficient to estop a party from asserting the [s]tatute of [l]imitations as a defense." <u>Kiernan v. Long Island R.R.</u>, 619 N.Y.S.2d 723, 724 (App. Div. 1994) (collecting cases). This rule is especially apt here since

Kidney has offered no reason to believe that "by engaging in protracted settlement discussions, defendant[s] intended to lull [him] into inactivity and to induce [him] to continue negotiations until after the statute of limitations had run." Murphy v. Wegman's Food Mkt., Inc., 529 N.Y.S.2d 648, 649 (App. Div. 1988).

Although Kidney is proceeding pro se, that does not affect the statute-of-limitations analysis. See Green v. Manhattan Cmty. Bd. 10, 12 N.Y.S.3d 63, 64 (App. Div. 2015) ("Petitioner's pro se status is not a basis to reach the merits of her claim. Because the proceeding is time-barred, we do not have discretion to hear it."). And while it does seem harsh to deem an action time barred when the plaintiff missed the deadline by a little over a week, there is no exception to statutes of limitations for actions that are filed a few days late, and New York courts regularly use statutes of limitations to bar actions that are filed only one day late. E.g., Torres v. Greyhound Bus Lines, Inc., 852 N.Y.S.2d 521, 522 (App. Div. 2008); Spirig v. Evans, 809 N.Y.S.2d 212, 213 (App. Div. 2006). The Court is therefore compelled to hold that any claims Kidney may have against Wal-Mart Stores East, LP relating to the alleged slip and fall are time barred.

### D. Opportunity to Amend

A court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). There is no indication that a valid claim might be brought against Foran, McMillon, Stills, or the Vestal Wal-Mart Supercenter (or Wal-Mart Stores East, LP), so these defendants will be dismissed from this action. But a liberal reading of

the Complaint suggests a slight possibility of valid claims against Webster, Shiohira, and Fahey as to their conduct during the settlement negotiations.[8] So Kidney can file an amended complaint, which must allege facts sufficient to show both that this Court may exercise personal jurisdiction over Foran, McMillon, Stills, and that these persons committed actionable wrongdoing against him.

## IV.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Kidney's Motion to Remand (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 5) is **GRANTED** on the grounds that the Court lacks personal jurisdiction over the individual defendants and that Kidney's allegations fail to state a plausible claim for relief; and it is further

**ORDERED**, that Kidney's Complaint (Dkt. No. 2) is **DISMISSED with leave to amend**; and it is further

**ORDERED**, that the Clerk of the Court terminate Greg Foran, Doug McMillon, David Stills, and the Vestal Wal-Mart Supercenter as defendants in this case; and it is further

**ORDERED**, that if Kidney wishes to proceed with this action, he must file an amended complaint as set forth above within **thirty (30) days** of the filing date of this Memorandum-Decision and Order; and it is further

---

[8]  Defendants note that none of the events described in the Complaint took place after February 10, 2015. Mem. at 9. The Court urges Kidney to keep this date in mind if he decides to amend his complaint, because as discussed above, New York imposes a one-year statute of limitations on intentional torts. N.Y. C.P.L.R. 215(3).

**ORDERED**, that if Kidney does not move to amend his Complaint within the time provided, the Clerk of the Court shall enter judgment in favor of John Webster, Bill Shiohira, and Melissa Fahey, and terminate them as defendants, with prejudice, without further order of the Court; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      February 27, 2017
                 Albany, New York



Lawrence E. Kahn
U.S. District Judge